May it please the Court, James Andre Bowles for Mr. Conlon. Mr. Conlon, I guess we have to call him a convict. He's not in jail now, but he was a convict for a long time. So he's not exactly the easiest client to deal with, and that's why we're here. There's two ways we can approach this case, the easy way and the hard way, at least for me. Now, if we look at the excerpts of record, pages 42, 46 and 47, it refers to, and that's Judge Hagan's order, about 15 pages of it. Now, if we look at that, it refers to the undisputed statement of facts. And those are defendant's statement of undisputed material facts. And what we know is that the order that brought about his arrest, that is, the order for special parole that brought about his arrest, did not contain instructions concerning Conlon's duty to contact the Parole Commission on his release. So we know, number one, he was not properly arrested because there were no grounds for that arrest. There was no order that required him to report. The other thing is, as we know in this case, Mr. Conlon was arrested while he was still on the first parole term. Mr. Olson, there isn't any dispute by the government to all these facts. Isn't the real issue here whether or not the magistrate judge abused her discretion with regard to handling the deemed, admitted requests for admissions? And that's correct, Your Honor. Doesn't the case turn or stand or fall on how we resolve that issue? It does, Your Honor, but if we look back and we look at the undisputed facts, then we know that unlike other cases like the Hadley case that we relied on in this case, there are undisputed facts that already establish liability on the part of the United States in this case. So not only do they come in and obtain the admissions. But if the admissions are binding, your client admitted that there was no negligence if the deemed admissions rule holds, correct? Under those circumstances, that's correct, Your Honor. Wouldn't that be dispositive on the liability issue if we uphold the, I'll call it the district court, it's the magistrate judge Cook's order? If you uphold her order, that's correct, Your Honor. The problem being is that, number one, there is no prejudice to the State in this case or, excuse me, to the United States in this case. And number two is it's not decided on the merits. We know it's not decided on the merits because we know the merits of this case. And that's how I go back to the undisputed facts. But are you trying to link the merits into either some conduct you're attributing to the government or to lack of prejudice? What's the relevance of that argument? Because we don't get there until we figure out whether the admissions are in or out. Well, in this case, Your Honor, it provides background in deciding whether the case will be decided on the merits or what are the merits of the case in this particular instance. So that's why I go back to undisputed facts. That's why I go back to a decision that's already been made by Judge Hagan that, in fact, they were wrong, that, in fact, they were on. And we look at the footnotes on page 46 and 47. We not only know that the arrest was not based on a valid order. We not only know that it violated that valid order, but we know that the State, excuse me, the United States, the officers were on notice because it says that in those footnotes that he had told them, and he had told them that there was no valid order. But, Mr. Booth, the government says that because of the fact that he didn't move to set aside these admissions until three weeks after the close of discovery, that they would have conducted further discovery had he denied that the government was not liable. So are you saying that there's no discovery they could have conducted in the face of these facts that would have perhaps allowed them to escape ultimate determination of liability? I'll answer that question with a question, Your Honor. What possible discovery could they have conducted after four years that would have given them a defense in this case? Okay. And do you have an answer to your rhetorical question to me? I do, Your Honor. There was none. Thank you, Mr. Booth. There was no discovery they could have conducted because they didn't notice this guy for a deposition. I don't find anything in there in the four years that he was ever noticed for his depo or anyone else. The other witnesses were the State office – I mean, the United States officers, the probation officers. They could have brought them in and said, well, I don't know what their defense possibly could have been because they were on notice, not should have been on notice. Are you – were you – what, in your view, should the district court have done? In this case, it would have denied the motion for summary judgment, relied on its previous order wherein there were facts in their undisputed material facts, and sent the thing back down – or, excuse me, sent it back to if there was some discovery, they could have allowed for further discovery, but to no avail. Sanctions would have been appropriate for the missing of the discovery dates and for the late motion to withdraw? I – I do believe, Your Honor, that sanctions would be appropriate. I would have opposed to that. What kind of – what kind of sanctions? I'm assuming that Mr. Conlon is impecunious, which is why he's suing the United States for damages. Typically, Your Honor, is – he could have been – would have been money sanctions. Yeah, but as a practical matter, that's not going to get us anywhere because he didn't have any money to pay the sanctions. So what else have you got to offer, counsel? Well – well, in this case, Your Honor, I don't want to sound cocky, but I think there would have been money available because of that. If he had prevailed on the merits. Because he wouldn't have wanted to pay it back. He would have wanted to pay the sanctions. He would have wanted to cut off from the anticipated win, is that it? In fact, Your Honor, we would have agreed to that. Well, I could see why. Yeah, okay. All right. Okay. Thanks, Mr. Bolson. So, Your Honor, I've got three minutes left. I'd like to save those. Thank you. You may. Thank you. Mr. Addington. Thank you, Your Honor. May it please the Court. My name is Greg Addington. I'm an assistant United States attorney for the District of Nevada in Reno. I was pleased to represent the Federal officers and Federal agencies, including the United States, before the district court, and I'm pleased to represent the United States as the appellee before this court. The character and substance of this case evolved over time. During the three years it was pending before the district court, it changed from a civil rights complaint against multiple agencies, multiple officers, based on the alleged violation of Mr. Conlon's constitutional rights, and evolved into a claim against the United States under the Federal Tort Claims Act that was accomplished primarily through a stipulation of the parties in May of 2003, which dismissed all of the claims against all of the defendants except for the claims against the United States. Counsel, what's your response to the argument that a lesser sanction not only was appropriate, but essentially was required by Hadley and other similar cases that suggest a sliding scale, or suggest that that party should have the opportunity to withdraw a deemed admission? This is not a sanctioned case. Mr. Conlon didn't violate any discovery rules. It simply gives effect to the provisions of Rule 36 that impose that consequence on the failure to respond to the request for admissions. So it's the prejudice to the government, because there's obviously a provision in the rules for withdrawal that we didn't have years ago, and then it was added. What's the prejudice to the government in this case? Well, the district court certainly was aware of the course of the proceedings and was aware of the fact that trial was imminent. At the time the district court denied the motion for relief, trial was only eight or nine days away. The discovery period, of course, had expired some months earlier, and during that discovery period, the requests for admissions were promptly propounded so that enough time was left at the conclusion of that 30-day response time to conduct further discovery if it was warranted. And so there was no change, because so far you've been telling me about the court's problems. Number one, can you identify any prejudice to the government? Number two, had the court granted the withdrawal, what additional discovery would have been appropriate? Well, this case concerns not just liability, but also a claim for damages. And if Mr. Conlin had denied timely the request for admissions, he would have necessarily denied the issue of negligence, obviously, but also there were issues of damages set forth in the request for admission. And I asked him about his further incarcerations post-release from the habeas proceeding. And so there is no question but that I would have noticed his deposition to inquire into the computation of damages that would be appropriate in his claim for damages. Anything else? I would have done his deposition. Basically, his deposition. So a misunderstanding between the admissions and the trial was possibly a deposition of the plaintiff, correct? Yes. Now, of course, after I took his office. And no attempt had been made to do that for a long period, correct? That's correct. It had been pending before the district court through motions and amended complaints back and forth for three years. There had never been an open discovery period until August of 2004 when the Court set out a 60-day discovery period. But you didn't notice his deposition in that period of time? No, I did not, because there was always, during that entire three-year period of time, there was always a motion to dismiss that was pending before the district court. And so I saw no need to take his deposition when I had what I thought was a well-supported motion. So you thought you had your case packaged up, of course. The real difficulty I have is it seemed like, you know, that there is some, I don't want to call it misconduct, but sort of failure to abide by the rules to a certain degree by the plaintiff. But that isn't the standard in these cases. I mean, I think we can all agree he should have done what he, you know, he should have been in touch with his counsel, he should have answered the admissions, and he should have let things run their pace. But it seemed that the district court was more focused on his badness, so to speak, as opposed to the prejudice to the government. And it just seems that perhaps the district court was looking at the wrong standard. Would you comment on that? I don't think the court was applying the wrong standard. The court put the failure to respond to the request for admissions in the context of other failures or delinquencies by the plaintiff, and I think that was appropriate. I don't see any reflection in the record or in the order that suggested that the district court was so bothered by some delinquency a few months earlier that it was somehow punishing or imposing a sanction on the plaintiff. The motion for relief itself did not set forth any basis for granting that motion. It did not have any evidentiary materials associated with it that would suggest that the matters set forth in the request were somehow incompatible with the historical facts. Mr. Connelly did not submit any evidentiary materials to support the motion for relief. And so the finding that was made explicit through the default provision in Rule 36 was compatible with what was already before the district court. You can't just go back, though, you still haven't really focused. All of that speaks to his delinquencies, and none of that speaks to prejudice. I mean, I can appreciate from the government's standpoint the frustration, because you did your case in a way that seemed you played by the rules, you did everything by the rules, you were incredibly professional in writing to them and saying, heads up, you haven't answered these. So you did everything by the book. But it seems that the cases really do focus on prejudice to the other party. And I just haven't heard it yet, but maybe that's because it hasn't been articulated. Well, there's a two-step standard, and prejudice is one of those steps. So I'll address the prejudice issue again. I think the prejudice arises from the fact that this was nearly three years into the case. The district court set it for trial, and the government justifiably relied upon the operative effect of Rule 36 and prepared its case so that those matters would be deemed admitted as the case proceeded not to trial, but through summary judgment. And so the government prepared its motion for summary judgment based on the record that then existed. At that time, there was no motion for relief pending. And so the government justifiably relied on the significance and permanence of those admissions. And then only after the summary judgment motion was pending did the motion for relief come in some two months after the request the responses were due on the request for admission. By that time, the trial matter was set for trial. And even at that late date in early January of 2005, with the trial date a week or so away, plaintiff had still not identified which matters he wished to withdraw. He simply said, well, there's several of them that I want to withdraw. The court didn't know which ones do you want to withdraw, which ones are still going to be admitted. The government has a right to know, with trial a week and a half away, what is really going to be the factual issues to be adjudicated by the court and what are what's going to be the subject of testimony before the district court. So even at that late date in early January of 2005, the prejudice was still explicit that nobody knew what really were the critical issues of fact to be determined at trial. The other standard, before we even reached the prejudice issue, is the plaintiff must demonstrate that the presentation of the case on the merits would be subserved by giving effect to the defaulted admissions, if you will. And he failed to meet that burden by failing to present any evidentiary materials that would suggest that these admissions are somehow incompatible with either prior testimony, which there was none, or incompatible with a declaration from somebody, which there was none, or with some document. No question but that the District of Arizona had made a finding that was dispositive of the habeas case, and that's a historical fact. But that doesn't automatically give rise to a negligence-based tort claim. And that seems to be what is implicit in Mr. Conlin's argument for this Court, that he can simply wave around this order from the District of Arizona and say, here it is, I automatically win. Clearly, inmates file post-conviction habeas proceedings, and sometimes they prevail. The fact that an inmate prevails on a post-conviction proceeding doesn't automatically mean that he has a tort claim, even though the result of that habeas proceeding was a tort claim. But he's running ahead from most people who file those claims. I mean, most Petitioners aren't even in that position at that point. Well, he prevailed in his habeas proceeding, and so he was wrongfully imprisoned. That's true of every habeas, successful habeas, inmate. But that doesn't automatically give rise to a tort claim simply because you prevailed on a habeas proceeding. And that was the state of the record when the district court denied the motion for relief. There was no finding of negligence at any time. There was a finding that he had prevailed in his habeas proceeding. That does not automatically give rise to a negligence-based tort claim. And I see I've gone a little over time. I apologize for that. Thank you. Mr. Bowles, you have some rebuttal time remaining as well.  The question was, were the admissions incompatible? That was the question they would have discovered had they properly done discovery. Well, that's not at all the case, because what we know, they were incompatible with the facts, because the facts are their undisputed facts, and we are aware, number one, that he was falsely arrested by the probation officers. Number two, they did that back in the Midwest, I think Michigan or somewhere like that. Minnesota. Anyway, that they did that without a warrant, he went to the hearings, and he put them on notice, and it's in the record, he put them on notice that they didn't have jurisdiction because there was no order. Then, even after they were on notice, they said his argument was weak, and that was the argument that we're here about. So there is no incompatibility. The argument, though, was that he didn't show good cause for relief, right? Could you address that? Because there really isn't much that was presented to the district court by way of justification to grant the relief that he was requesting, other than I'm going to lose my case if you don't let me withdraw my admission. Well, what we – the court was on notice of the facts in this case, the undisputed material facts. That was the argument. But that's not the issue. The issue, the rule says that the district court may permit the admissions to be withdrawn if he establishes good cause for it. And my question is – That is, cause for the delay rather than cause for wanting to win the case. And I understand in this case, and that's one of the things the court said, they said, well, he hasn't been ill, he hasn't been – well, I don't – I mean, does this get back to the point you made in your opening, that it was a case that he had communication problems with them and he just kind of blew you off? Well, that's exactly it, Your Honor. You know, he went to Las Vegas, and all we could put in was we have not been able to contact this fellow. But it doesn't change the nature of his claim and the need to decide it on the merits. But it does address the issue as to whether or not he could justify the long delay in moving to withdraw, doesn't it? It does, Your Honor. But when we look at the lack of prejudice, which is really – Before we get to prejudice, though, don't – isn't the controlling standard abuse of discretion by the district court? That's correct, Your Honor. And how can I conclude that it's abuse of discretion if he didn't provide the judge with any legitimate reason as to why his – his motion should be granted? Well, I don't say that – I mean, arguably, when we look at everything in its – in its entirety, what constitutes legitimate reason in this particular case? We have somebody who was of the understanding that he had an excellent case, that he was – we were unable to find him for a short – well, not a short period of time, but a period of time. But when it comes down to it, it's kind of like no harm, no foul. There was no prejudice. There was a valid reason for – I mean, this guy had gone through – in essence, three attorneys had been prosaic. He had another attorney who gave him up, and then we ended up with him, Your Honor. So difficult clients have good cases. And in this case, a difficult client had a good case, and there was no prejudice. Thank you, Your Honor. We appreciate very much the arguments of both parties. The case just argued is submitted.
judges: Graber, McKeown, Tallman